[Sac. No. 2972. In Bank—November 4, 1919.]

ENGELS COPPER MINING COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, etc., et al., Respondents.

**[1]** WORKMEN'S COMPENSATION ACT—EMPLOYMENT OF SPECIAL OFFICER BY PRIVATE PARTY—PERFORMANCE OF SERVICE IN COURSE OF PRIVATE EMPLOYMENT.—Where a private company or individual employs a watchman or special officer and in making the selection deliberately chooses an officer of the law in order to take advantage of his authority, and where such officer performs acts advantageous to and expressly or impliedly directed by the employer which happen

at the same time to be acts which it would be his official duty to perform, such employee acts in the course of his private employment within the meaning of section 8 (a) of the Workmen's Compensation Act.

[2] ID.—DEPUTY OFFICER—WHEN ACTING IN COURSE OF PRIVATE EMPLOYMENT.—Under the proviso of section 8 (a) of the Workmen's Compensation Act, where a deputized officer of the law performs acts which, while official in their nature, are advantageous to the employer and directed by him, not incidentally merely, but as part of the duties prescribed and contemplated in the contract of employment, such deputy is acting in the course of his private employment.

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission. Affirmed.

The facts are stated in the opinion of the court.

R. P. Wisecarver and Redman & Alexander for Petitioner.

A. E. Graupner for Respondents.

LENNON, J.—*Certiorari* to review the action of the Industrial Accident Commission in awarding death benefits to Eva A. Smith, widow of Franklin H. Smith, deceased. Smith was an employee in the service of petitioner and was also a deputy sheriff. He was killed on the evening of August 4, 1918, while attempting to quell a drunken disturbance in a shack owned by petitioner and situated adjacent to its premises. The single question presented is whether or not Smith was killed while "performing service growing out of and incidental to" his employment.

The return to the writ discloses the following facts: At the time of Smith's death, petitioner was operating a mine in Plumas County. Upon its land were situated the various shops, machines, and buildings appropriate to such an operation, together with bunk-houses for the use of such of the men as did not choose to rent private houses which were also situated on the premises. The shack where the disturbance occurred was located just below the petitioner's machine-shop. It was a frame and canvas structure, and, while it does not appear who owned the land upon which it stood, it appears that the petitioner owned the frame and

that the occupants were under its control, one of them, an Indian named John Smith, being in its employ.

At the time of his death, the deceased, Franklin H. Smith, was employed by petitioner as a general utility man to look out for its interests on and off the company's property. He acted as fire-warden, but his duties in this connection consumed on the average of less than an hour a day. He was required to meet trains and look after arriving employees, to remove women of questionable character from the premises, to watch prostitutes who established camps outside the company's property, and, where they were making trouble or were supposed to be selling liquor, to have them move on. He was, moreover, required to keep down disorder from drunkenness, to settle disturbances among the men, and to do the work of a regular police officer in keeping order. Smith was also a deputy sheriff. During the period of his employment by petitioner as watchman or special officer, he had been called upon several times by the sheriff to act in civil matters, but he had rendered no service as deputy sheriff in criminal matters under the sheriff's orders. His activities were confined to matters going on around the mine, and concerning these matters it was his duty to report to the superintendent of the mine rather than to the sheriff.

On the evening in question, a Mexican had brought some whisky to John Smith's shack and a drunken orgy ensued, in the course of which one of the occupants of the shack threatened gun-play. One of the other occupants of the shack sent for the deceased. It does not appear exactly what information the deceased received, but one Greaves testified at the coroner's inquest that he saw the deceased, who said: "I have got to go down and see about a drunken Indian or buck." He then went down to the shack and was shot and killed.

These facts warrant a finding that in going to the shack to quell the disturbance the deceased was doing exactly what he was hired by petitioner to do. This conclusion is further fortified by the fact that the deceased had been expressly required to quell or prevent disturbances adjacent to the company's premises. The reason for these directions was explained by the company's superintendent as follows: "If a man got killed and there was a big row

and it was an employee of the copper company, there would be a loss to us if a court trial came up."

Petitioner does not deny that the deceased had acted to quell or prevent disturbances before under the direction of the superintendent of the company. It is insisted, however, that in so doing he was "of course" acting in an official capacity as deputy sheriff. This raises the only serious question presented by the petition. Where a private company or individual employs a watchman or special officer and in making its selection deliberately chooses an officer of the law in order to take advantage of his authority, as did petitioner in the instant case, and where such officer performs acts advantageous to and expressly or impliedly directed by the employer which happen at the same time to be acts which it would be his official duty to perform, is such an employee acting in the course of employment within the meaning of the Workmen's Compensation Act? Respondent relies upon section 8 (a) of the statute (Stats. 1917, p. 835), which defines the term "employee" and *includes* "all elected and appointed paid public officers," but *excludes* "any person holding an appointment as deputy clerk, deputy sheriff, or deputy constable appointed for the convenience of such appointee, who receives no compensation from the county or municipal corporation or from the citizens thereof for services as such deputy." The section, however, *provides* "that such last exclusion shall not deprive any person so deputized from recourse against any private person employing him for injury occurring in the course of and arising out of such employment."

The question presented in the instant case involves the construction to be placed upon the words of the *proviso* above quoted. Petitioner contends that the "employment" referred to in the *proviso* has no relation to the performance of official acts, and that a deputized person can be an employee only when performing some act in no wise connected with his official duties. [1] With this construction we cannot agree. It would not, we think, require an express statutory reservation to secure to a deputy sheriff the right to compensation for an injury received in the course of working at a mechanical art or trade. The clause in question should not be regarded as intended to effect this purpose, and thereby be interpreted as a purely supereroga-

tory enactment, if it may fairly be construed in such a manner as to give it a rational purpose. In our opinion the statute is to be construed in the light of the common practice of property owners to choose as watchman or special officers men who are deputized officers of the law and to secure the deputization of such watchman or special officers engaged by them as are not already deputies. It is obviously to this class of deputies that the *excluding* clause of the statute refers in sharp contrast to the provisions of the *including* clause. It is in the light of the meaning of the *excluding* clause that the *proviso* in question must be read. [2] So read, its clear effect is to provide that where a deputy performs acts which, while official in their nature, are advantageous to the employer and directed by him, not incidentally merely but as part of the duties prescribed and contemplated in the contract of employment, then such deputy is acting in the course of his private employment within the meaning of the provisions of the Workmen's Compensation Act.

Upon this view of the statute, petitioner cannot escape liability to compensate the widow for the death of Franklin H. Smith on the plea that in performing the duties incident to his employment he was also fulfilling a duty to the county.

The award is affirmed.

Olney, J., Shaw, J., Wilbur, J., Lawlor, J., Melvin, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred, except Melvin, J., who was absent.