205 P.2d 834

SCOFIELD v. LORDSBURG MUNICIPAL SCHOOL DIST. OF HIDALGO COUNTY.

No. 5165.

Supreme Court of New Mexico.

April 30, 1949.

E. Forrest Sanders, Mahlon T. Everhart, Jr. and Robert J. Barrett, all of Lordsburg, for appellant.

H. Vearle Payne, of Lordsburg, for appellee.

SADLER, Justice.

The Lordsburg Municipal School District of Hidalgo County, the defendant below, appeals from a judgment against it in favor of Harry L. Scofield, the plaintiff, awarding him compensation for temporary total and permanent partial disability on account of an injury suffered in the course of his employment by defendant.

Trial was to the court and it found the facts to which our review is limited save as any of them may be challenged successfully for want of adequate support in the evidence. As found, they disclose that plaintiff was employed by the defendant School District on July 10, 1946, to do carpenter work on the Central School Building in the town of Lordsburg, on a day to day basis and to be paid therefor at the rate of $8.00 per day. He worked at this employment from July 10, 1946, to August 19, 1946, during which time he constructed some tennis court backstops on the school grounds surrounding said building and repaired doors, windows, window screens, hung venetian blinds and did other miscellaneous repair jobs in and about the school building.

While thus engaged, at the particular moment hanging venetian blinds from a standing position on a ladder, the plaintiff fell and suffered a compound fracture of the right ankle. As a proximate result of this injury and due to complications that followed, the plaintiff's right leg was amputated above the knee on August 13, 1947. During the period from August 19, 1946, date of injury, to August 13, 1947, date of amputation, the plaintiff was totally disabled as a result of his injury and was unable to perform any kind of labor or pursue any gainful occupation. He had been earning an average weekly wage of $48.00 during the period of his employment.

The court concluded from the foregoing facts that defendant was liable to plaintiff

under the Workmen's Compensation Act, 1941 Comp. § 57-901 et seq., and awarded him compensation at the rate of $18.00 per week for the period of total disability from August 26, 1946, seven days after the injury, to August 13, 1947, plus an award in the same amount for 130 weeks for loss of one leg above the knee. In addition, the plaintiff was given an award of $400.00 for medical and hospital bills and $500.00 for the benefit of his attorney, H. Vearle Payne, for services rendered in prosecuting his claim in the district court. This appeal followed.

■ It is first argued by defendant that the course of employment in which plaintiff was engaged was not "extra-hazardous," within the purview of the Workmen's Compensation Act of New Mexico. We have no fault to find with the trial court's conclusion that plaintiff was engaged in an "extra-hazardous" occupation at time of his injury. In order to arrive at this conclusion, however, two major contentions presented by defendant must be met and answered. First, it is said there were two employments; (a) to repair the building by replacing and puttying broken window panes, mending and painting window screens; (b) to hang venetian blinds. It is enough to say in disposing of this contention that the trial court found on conflicting evidence there was but a single employment, namely, carpenter work in repair

of a building, under which work was continuous down to the moment of the injury.

· ■ It would serve no useful purpose to attempt a detailed recital of the testimony and we shall not undertake to do so. However, the plaintiff and a co-worker both testified there was but a single employment and that work was continuous under it. The rate of pay was the same whether hanging venetian blinds, installing and puttying new window panes, or replacing worn out window screens with new ones. Not a day, nor an hour, was lost when turning from the one kind of work to the other. Under well settled principles of review, we are unable to overturn a finding of fact resting on substantial evidence as this one does.

In the second place, and under the circumstances here shown, was the hanging of venetian blinds in replacement of old, worn out shades and drapes, so related to the other work upon which the plaintiff was engaged as to be deemed an essential part thereof and hence to fall into the general category of "repairs" to a building? We have no hesitancy in giving an affirmative answer to this inquiry. Laying aside for the moment the question whether hanging such blinds, in and of itself, constitutes the "repair" of a building, none can successfully urge but that the general nature of plaintiff's employment was to repair a building. If defendant's counsel could separate the hanging of venetian blinds from

the work done under the original employment, and relate it to a separate employment, undoubtedly they would be in a better position to urge this as a bar to recovery. However, the trial court's finding that the employment was single forecloses a division of the employment into two separate transactions. Considered then as a single employment, the mere fact that the hanging of venetian blinds is not work done in the "decoration, alteration, (or) repair *** of any building" (1941 Comp. § 57-912) does not serve to defeat recovery, if the hanging of venetian blinds was but an incident of the general employment on which the plaintiff was engaged. See Koger v. A. T. Woods, Inc., 38 N.M. 241, 31 P.2d 255, 256, where we said:

"We hold not only upon authority, but on reason and logic, that the true test is not the particular item of work the injured employee is doing, but rather the general nature and the object of the employment."

Whether standing alone, the hanging of venetian blinds may be properly classified as the "decoration, alteration" or "repair" of a building within the phrase "building work" as used in section 57-912, supra, we find it unnecessary to determine. But, see Albuquerque Foundry & Machine Works v. Stone, 34 N.M. 540, 286 P. 157; Dysart v. Youngblood, 44 N.M. 351, 102 P.2d 664; Board of County Commissioners of Bernalillo County v. McCulloh, 52 N.M. 210, 195

P.2d 1005; Beaudry v. Bell, 250 Ill.App. 468; Porter Screen Mfg. Co. v. Hunter, 69 Pa.Super. 22; Great Northern Ry. Co. v. Wojtala, 9 Cir., 112 F.2d 609; and Grady v. National Conduit & Cable Co., 153 App. Div. 401, 138 N.Y.S. 549, for cases suggesting by way of analogy that such work might be treated as an "alteration" or "repair" of a building.

■ Having determined that the Act in question classifies the work being performed by plaintiff as an extra-hazardous occupation or pursuit, it next must be determined whether the defendant, although not engaged as an employer in carrying on this extra-hazardous work as an "occupation or pursuit" for the purpose of business, trade or gain, is nevertheless liable under the act while so engaged. Here the language of the Act itself comes to plaintiff's aid. 1941 Comp. § 57-912(h) provides:

" 'Employer' includes any person, or body of persons, corporate or incorporate, and the legal representative of a deceased employer or the receiver or trustee of a person, corporation, association or partnership engaged in or carrying on for the purpose of business, or trade or gain any of the occupations or pursuits to which this act (§§ 57-901—57-931) is applicable, *and also includes the state and each * * * school district * * * employing workmen under the terms of this act (§§ 57-901—57-931) although not engaged in carrying on for the purpose of business, trade or gain*

*any of such occupations or pursuits."* (Emphasis added.)

Thus it is that the state and its political subdivisions employing workmen under the terms of the act are made subject to its provisions, although not engaged in carrying on an extra-hazardous occupation or pursuit for the purpose of business, trade or gain. In this respect, the present case is to be distinguished from the cases of Koger v. A. T. Woods, Inc., supra, and Rumley v. Middle Rio Grande Conservancy Dist., 40 N.M. 183, 57 P.2d 283. Even though the specific types of work on which the employees, at the moment, were engaged in those cases might classify under the Act as extra-hazardous occupations or pursuits, no provision of the Act made the employer subject to its provisions while they were so engaged, as in the case at bar.

Having concluded that the plaintiff was engaged, generally, in an extra-hazardous occupation or pursuit at the time of his injury, it becomes unnecessary to consider whether the plaintiff's employment was "purely casual and not for the purpose of the employer's trade or business" within the intent of 1941 Comp. § 57-912(i). Indeed, as we have just seen, the state and named political subdivisions thereof, a class within which the defendant easily falls, employing workmen under the terms of the Act, may become liable under it to them, notwithstanding the occupation or pursuit in which an injury was suffered was not one being carried on by it for the purpose of business, trade or gain.

Counsel for defendant next contend that, even if liability under the Act be held to exist, still the trial court erred in awarding to the plaintiff compensation at the statutory rate of $18.00 per week for the period from August 26, 1946, seven days after injury, to August 13, 1947, for temporary total disability, in addition to an award in like weekly amounts for 130 weeks for the loss of one leg by amputation above the knee.

The position of defendant's counsel on this claim may best be summed up in their own language taken from the reply brief, to-wit:

"The claimant can recover for the permanent disability, or could recover for the temporary disability. He could recover for the temporary disability and for the permanent disability, provided that the time given for temporary disability is deducted from the time given for the permanent disability, as such would mean, in effect, just one award."

The argument in support of this contention is based largely upon the change wrought in the pertinent language of the controlling statute as it read in 1929 Comp., § 156-118, through the amendment by L. 1937, c. 92, § 10 into its present form as found in 1941 Comp. § 57-919. The material portion of 1929 Comp., § 156-118, prior to amendment, read as follows:

Compensation for all classes of injuries shall run consecutively and not concurrently as follows:

"Surgical, medical and hospital services and medicines, as provided in this paragraph. After the first seven days, compensation during temporary disability. Following both, either or none of the above, *compensation consecutively for each permanent injury. Following any or all or none of the above,* if death results from the accident, funeral expenses as hereinbefore provided following which compensation to dependents, if any." (Emphasis added.)

As amended by L.1937, c. 92, § 10 (1941 Comp. § 57-919) the statute now reads, the italicized portion as it stood in the 1929 compilation, supra, being omitted by the amendment, as follows:

"Compensation for all classes of injuries shall run consecutively and not concurrently as follows:

"Surgical, medical and hospital services and medicines, as provided in this paragraph (section). After the first seven (7) days, compensation during temporary disability. Following both, either or none of the above, if death results from the accident, funeral expenses as hereinbefore provided following which compensation to dependents, if any."

It is to be noted that the amendment omits the language "compensation consecu-

tively for each permanent injury." Upon this omission counsel base their argument that compensation may not be had both for temporary and for permanent disability. They agree that prior to the amendment compensation for both types of disability might be recovered. The argument does not appeal to us as sound. Certainly, such a construction would be contrary to the trend of current legislative history reflecting constant enlargement, rather than curtailment, of benefits to employees under the Act.

We agree with counsel for plaintiff, that the amendment was enacted to eliminate the confusion arising from employment of the language omitted by it. Just what was meant by this language we do not undertake to say. Compensation is payable for "disability" caused by "injury," not for the "injury" itself. One might think the legislature intended to use the word "disability" in the statute where it employs the word "injury" but for the fact that it speaks of "each permanent injury." However, there is actually but *one disability,* even though it may result from *two injuries.* We are satisfied to attribute the amendment to the confusion engendered by this language and leave the question of what it meant as something to be guessed at by others.

The trial court did not err in declining to deduct from the scheduled award for loss of one leg above the knee the amounts

paid plaintiff for temporary total disability prior to amputation. 71 C.J. 830; 58 A.J. 786; Curtis v. Hayes Wheel Co., 211 Mich. 260, 178 N.W. 675; In re McConnell, 45 Wyo. 289, 18 P.2d 629, 632, 88 A.L.R. 376, and annotation at 385. The author of the text, in 71 C.J. 830, states:

"Under some of the acts it has been held that compensation for temporary total disability and permanent partial disability cannot be awarded either concurrently or consecutively, except as the act may provide for such compensation when the temporary total disability extends beyond the normal healing time. Under other statutes, where an injury occasions both a temporary and a permanent disability, a recovery may be had for both, and compensation for permanent partial disability may be awarded at the expiration of the period of the award for total incapacity, and can commence only when compensation for temporary total disability ceases."

Speaking on the same subject, the author of the text in 58 A.J. 786 refers to the effect of "in lieu" provisions and says:

"It is to be observed, in this connection, that some acts contain so-called 'in lieu' provisions, in substance providing that compensation provided for under certain schedules for injury to, or loss of, designated members, shall be 'in lieu' of other compensation. These provisions in some cases are construed to refer only to injuries to, or loss of, bodily members designated under the schedules governing permanent partial disability, and not to extend to or include compensation for temporary total disability, or to prevent awards for both. In other cases, however, it is held that the 'in lieu' clause applies not only to awards for injuries under the specific schedules of injuries to, or loss of, members, but also to awards for temporary total disability, and that awards cannot be made for both."

In the case of In re McConnell, supra, after citing many authorities in support of its conclusion, the court said:

"Under these authorities and others which have received our attention, we conclude that, as a matter of sound policy, the lawmaking bodies in the statutes enacted and the courts in their construction thereof have very generally favored making an award for temporary total disability, and, when that disability has terminated, if a permanent partial disability has resulted from the injury, then the allowance of an additional award for that. This view certainly harmonizes with the canon of construction to be applied to acts of this character hereinbefore set forth."

The reasoning of the cases upholding the right to compensation, both for temporary and for permanent disability, under statutes like ours and conditions here shown to

exist, is persuasive. We think it affords the proper construction of our statute. The absence of the "in lieu" provision in it disposes us toward such a construction. The trial court did not err in declining to deduct compensation paid for temporary disability from that awarded for loss of the leg by amputation above the knee. Nothing said in Gonzales v. Pecos Valley Packing Co., 48 N.M. 185, 156 P.2d 1017, questions soundness of the conclusion drawn. Cf. Gonzales v. Sharp & Fellows Contracting Co., 48 N.M. 528, 153 P.2d 676.

The conclusions already reached dispose of final contention that the work being done by plaintiff at time of his injury was not in the usual course of defendant's business. When we hold invulnerable to attack the trial court's finding that there was but a single employment, namely, to do carpenter work in repair of a building, as to which the hanging of venetian blinds was but an incident, this contention is left without merit.

The plaintiff will be allowed an additional fee of $500.00 to be paid him by the defendant for the benefit of former's attorney for services rendered on this appeal.

Finding no error the judgment will be affirmed and

It is so ordered.

BRICE, C. J., and LUJAN, McGHEE, and COMPTON, JJ., concur.